E-FILED
Tuesday, 14 November, 2006  04:26:08 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Kim Ransdell,             )
      Plaintiff    )
              )
              )  Case No. 04-1209
              )
Heritage Enterprises, Inc., d/b/a   )
Heritage Manor,            )
      Defendant   )

**ORDER**

The parties have consented to have this case heard to judgment by a United States Magistrate Judge pursuant to 28 U.S.C. § 6369(c), and the District Judge has referred the case to me. Now before the court is the defendant's motion for summary judgment (#16). The motion is fully briefed and I have carefully considered the arguments of the parties. For the reasons explained below, the motion is denied.

**SUMMARY JUDGMENT GENERALLY**

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be entered if and only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. See Jay v. Intermet Wagner Inc., 233 F.3d 1014, 1016 (7th Cir.2000); Cox v. Acme Health Serv., 55 F.3d 1304, 1308 (7th Cir. 1995).

In ruling on a summary judgment motion, the court may not weigh the evidence or resolve issues of fact; disputed facts must be left for resolution at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The court's role in deciding the motion is not to sift

through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. Waldridge v. American Hoechst Corp., 24 F.3d 918, 922 (7th Cir.1994). The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial.

The court is to examine all admissible facts, viewing the entirety of the record and accepting all facts and drawing all reasonable inferences in favor of the non-movant, Erdman v. City of Ft. Atkinson, 84 F.3d 960, 961 (7th Cir. 1996); Vukadinovich v. Bd. of Sch. Trustees, 978 F.2d 403, 408 (7th Cir. 1992), cert. denied, 510 U.S. 844 (1993); Lohorn v. Michal, 913 F.2d 327, 331 (7th Cir. 1990); DeValk Lincoln-Mercury, Inc. V. Ford Motor Co., 811 F.2d 326, 329 (7th Cir. 1987); Bartman v. Allis Chalmers Corp., 799 F.2d 311, 312 (7th Cir. 1986), cert. denied, 479 U.S. 1092 (1987), and construing any doubts against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); Trotter v. Anderson, 417 F.2d 1191 (7th Cir. 1969); Haefling v. United Parcel Serv., Inc., 169 F.3d 494, 497 (7th Cir.1999). The existence of "some alleged factual dispute between the parties," or "some metaphysical doubt," however, does not create a genuine issue of fact. Piscione v. Ernst & Young, L.L.P., 171 F.3d 527, 532 (7th Cir.1999). The proper inquiry is whether a rational trier of fact could reasonably find for the party opposing the motion with respect to the particular issue. See, e.g., Jordan v. Summers, 205 F.3d 337, 342 (7th Cir.2000).

The parties must identify the evidence (i.e. those portions of the pleadings, depositions, answers to interrogatories, admissions, affidavits, and documents) that will facilitate the court's assessment. Waldridge, 24 F.3d at 922. Thus, as Fed.R.Civ.Proc.

56(e) makes clear, a party opposing summary judgment may not rely on the allegations of her pleadings. Rather:

> [T]he adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

See, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). See also, Local Rule CDIL 7.1(D).

Neither the moving party nor the responding party may simply rest on allegations; those allegations must be supported by significant probative evidence tending. First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 290 (1968). See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)(when the moving party has met its burden, non-moving party must do more than show some "metaphysical doubt " as to material facts). A scintilla of evidence in support of the non-moving party's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 250.

If the undisputed facts indicate that no reasonable jury could find for the party opposing the motion, then summary judgment must be granted. Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995), citing Anderson, 477 U.S. at 248. If the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party and on which that party will bear the burden of proof at trial, then summary judgment is proper. Celotex, 477 U.S. at 322; Waldridge, 24 F.3d at 920.

Although courts weighing summary judgment motions in employment cases must take special care not to invade the province of the fact finder, employment cases are governed by the same rules that govern any other summary judgment case, and they are equally amenable to summary disposition so long as there is no genuine dispute as to material facts. Giannopoulos v. Brach & Brock Confections, Inc., 109 F.3d 406, 410 (7th Cir. 1997); Gonzalez v. Ingersoll Milling Machine Co., 133 F.3d 1025, 1031 (7th Cir. 1998). While intent and credibility are often critical issues in employment discrimination cases, there is no special version of Rule 56 that applies only to them. See, e.g., Alexander v. Wisconsin Dep't of Health and Family Serv., 263 F.3d 673, 681 (7th Cir.2001); Wallace v. SMC Pneumatics, Inc., 103 F.3d 1394, 1396 (7th Cir.1997); Haugerud v. Amery School Dist., 259 F.3d 678, 689 (7th Cir.2001). Summary judgment is not a substitute for a jury's determination about credibility. Paz v. Wauconda Healthcare and Rehabilitation Centre, 464 F.3d 659, 664 (7th Cir. 2006).

## UNDISPUTED FACTS

The following statement of facts is taken from the parties' Statements of Fact, the responses and replies thereto, and the evidence submitted in support of the parties' pleadings.

Plaintiff Kim Ransdell was employed as a registered nurse by defendant Heritage Manor. This was her second term of employment with Heritage Manor; her employment had been terminated in 1999 for excessive absenteeism[1].

---

[1] Plaintiff does not deny this fact but does dispute its materiality. I find it material to the context of the issues presented and therefore consider it.

In December of 2003, Patricia Kruse was Director of Nursing and Peggy Lucht as Assistant Director of Nursing at Heritage Manor. The administrator was Cindy Wegner, and the Senior Vice President of Human Resources was Connie Hoselton.

Defendant's personnel policies include a procedure for tracking sick leave taken by employees. When an employee calls in sick or reports that they will be absent, that information is recorded on a "red slip." During 2003, Plaintiff received 22 red slips[2], the first on January 5 and the last on December 22. She was counseled verbally on December 4, 2003, for excessive absenteeism. In addition, Plaintiff received several "progressive write-ups" about her work performance during 2003.[3]

This lawsuit arises out of her absences in mid-December 2003. On December 18, 2003, Plaintiff was seen at Carle Clinic; the records show that the visit was for an abscess in her hip causing her hip pain, and a yeast infection. On December 22, Plaintiff called Peggy Lucht stating that she would not be coming to work on that date because her knee hurt and she could not stand on it. Plaintiff told Lucht that she was going to the doctor about her knee. She did in fact go to Carle Clinic Convenient Care on that date, where she was seen by Dr. Bell. He told her to ice and elevate the knee and that she could only work "sitting down, no standing work."

---

[2] Plaintiff had taken 2 weeks of FMLA leave earlier in 2003. It appears from the pleadings that those 14 days are included in the 22 red slips. Plaintiff disputes the relevance of this information to the decisions that must be made in this motion. I find plaintiff's work history to be relevant and therefore consider this information

[3] Plaintiff disputes the materiality of this fact. I consider it for the same reason stated in footnote 2 above.

Plaintiff's next scheduled work day was December 24. Plaintiff called Lucht and told her on the 22nd that she could work on the 24th, but only with the restriction stated by Dr. Bell. Lucht told her that Trish Kruse said that the restriction was unacceptable. Plaintiff then said that she could not work on the 24th. Kruse then phoned Plaintiff on the 23rd, asking if she had seen a physician. Plaintiff said she had seen Dr. Bell. Kruse inquired if that was her family physician; Plaintiff said it was not. Kruse told her to see her family physician or, if he could not see her, to go to an emergency room. Kruse also told her to get someone to cover her December 24th shift.

Plaintiff went to the emergency room on December 23rd at BroMenn hospital. BroMenn told Ransdell they could not give her a release from work, but that she would have to see an orthopaedic surgeon. She was referred to Dr. Seidl, who was not available on that date. She returned home at 7:00 pm on Dec. 23rd. Kruse had left a message that she should phone no later than the next morning. She made several attempts to reach Kruse on the morning of the 24th. When she reached Kruse, she was told that she was fired for excessive absenteeism.

Defendant asserts that Lucht and Kruse were in the dark about Plaintiff's medical problems, because Plaintiff did not provide them with documentation about her medical condition and treatment. For example, Plaintiff "called off" her 24th shift on the 22nd, but did not provide any medical verification slip. The decision to terminate Plaintiff's employment was made by Cindy Wegner and Patricia Kruse on the 23rd for "her excessive absenteeism and her lack of dependability and the progressive write-ups that we had done."

On December 23rd, plaintiff was seen at McLean County Orthopedics and on December 31, 2003, she was seen by an orthopaedic surgeon, Mark Hansen, who shares calls with Dr. Seidl. Dr. Hansen concluded that pain from the hip abscess had caused her to limp, with the effect of weakening her quad muscles and affecting her knee. He testified that if he had seen her on the 18th or 22nd of December, he would have imposed the same limitation - i.e. no standing work - with the additional limitation that her leg be kept straight while sitting. Hansen continued treating her with medication and physical therapy until March 17, 2004.

On January 5, 2004, Plaintiff sent a letter to Kruse requesting 12 weeks of leave under the FMLA. Kruse claims[4] not to have received this letter until January 19, on which date she delivered it to Wegner who passed it on to Hoselton. Hoselton wrote to Plaintiff on January 26th, denying her request for FMLA leave because her employment had been terminated before the request was made.

Two comments must be made about the parties' statements undisputed facts. First, many of the purportedly undisputed facts are actually hotly disputed, with evidence that could support either party's theory of the case. A fair number of these "facts" can only be determined by assessment of credibility. It was wholly improper to characterize such facts as undisputed.

---

[4]Plaintiff's attorney disputes this claim, affirming that his office placed the letter in the mail on January 5, 2004. The dispute about when the letter was actually received is immaterial to the pending motion.

Second, Defendant makes much of its internal personnel policies. While those policies may explain why employees of the defendant did what they did, the policies are not dispositive of the two discrete legal issues raised in this motion.

### FAMILY MEDICAL LEAVE ACT

The Family and Medical Leave Act, 29 U.S.C. § 2612 (a)(1)(D)["FMLA"] grants to an eligible employee up to 12 weeks of unpaid leave per year for, inter alia, a "serious health condition" that leaves the employee unable to perform her job duties. The FMLA defines "serious health condition" as including an illness resulting in more than 3 days incapacity and requiring either a minimum of two treatments by a provider or one treatment with a continuing regimen of treatment under the provider's supervision. Id. at § 2611(11); 29 C.F.R. § 825.114(a)(2)(I)(A) and (B); see, Kauffman v. Federal Express Corp., 426 F.3d 880 (7th Cir. 2005); Price v. City of Fort Wayne, 117 F.3d 1022, 1024 (7th Cir. 1997).

FMLA requires that an employee needing a leave give notice to the employer of the necessity for leave. Where the need was not foreseeable, the employee must give such notice "as is practicable." 29 U.S.C. § 2612(e). That notice may be either written or verbal, in person or by telephone. 29 C.F.R. § 2612.302. The employee need not reference the FMLA; she simply must advise of the need for leave in a manner that makes the employer aware. 29 C.F.R. 825.302(c). See also, Price, 117 F.3d at 1024.

Once the employer has notice, more information, including medical certification, may be requested, and the employee is expected to provide that information where possible. 29 U.S.C. 2613; 29 C.F.R. 825.303(c). The employer may require medical certification that includes the date the condition began, its likely duration, relevant medical facts, and a statement that the employee is unable to work. 29 U.S.C. § 2613(a), (b); 29 C.F.R. §

825.306.  If the certification is incomplete, the employer must give the employee a reasonable opportunity to cure the deficiency.  29 C.F.R. § 825.305(d);  see also, Kauffman, 426 F.3d at 886.  Where the need for leave is unforeseeable, the FMLA gives the employee 15 calendar days after the employer's request to submit certification from the provider.  29 C.F.R. 825.305(b);  Kauffman, 426 F.3d at 886; Rager v. Dade Behring, 210 F.3d 776, 777 (7th Cir. 2000).

An employer is prohibited by FMLA from interfering with, restraining, or denying the exercise of any statutory right (including the right to reinstatement upon conclusion of leave).  29 U.S.C. § 2615(a);  Nevada Dept of Human Rights v. Hibbs, 538 U.S. 721, 724-25 (2003).

The Act provides for a personal right of action.  29 U.S.C. § 2615(a)(2) and (b). A claim for wrongful termination can be brought under either a discrimination/retaliation or interference/entitlement theory; the difference is that the first type of claim requires proof of discriminatory or retaliatory intent while the latter requires only proof that the employer denied the employee his or her entitlements under the Act.  Kauffman, 426 F.3d at 884-885. The case at bar is brought under the interference/entitlement theory.

Defendant has filed this motion for summary judgment on two grounds:  (1) that Plaintiff was not eligible for FMLA leave when she sent the January 5 letter, because her employment had already been terminated; and (2) that there is no evidence that her employer had sufficient notice that she suffered a serious health condition, thereby triggering an FMLA analysis.

**DISCUSSION**

9

Defendant's first argument needs only a brief mention. The defendant's position - that plaintiff could not request medical leave on January 5 because her employment was terminated on December 23 - begs the question whether plaintiff was entitled to medical leave under the FMLA on December 23rd. If she was, then termination of her employment on December 23 interfered with her rights under the FMLA.

As the Kauffman court emphasized, the proper inquiry is whether the employer 'respected' Plaintiff's entitlements under the statute. 426 F.3d at 885. The Defendant does not dispute that Plaintiff's employment was terminated because she was absent from work, so the narrow question presented in this case is whether she was entitled to take FMLA leave on December 23. For purposes of this motion, entitlement depends on Plaintiff's notice to the employer of her need for leave.

FMLA does not require that an employee needing a leave give *written* notice to the employer of the necessity for leave. Where the need for medical leave was not foreseeable, the notice need only advise of the need for leave in a manner that makes the employer aware. Defendant relies far too heavily on the fact that Plaintiff had not provided a written off-work slip from the doctor before she was fired. While that may be true, it is not a sufficient basis for concluding that her notice was insufficient under FMLA, because there were a number of telephone calls about her medical condition.

There are obvious disputes of fact about the substance of the various phone conversations between Plaintiff and Lucht, Kruse and Wegner between December 18 and December 24. Whether those phone conversations gave adequate notice to the employer is a conclusion that must be drawn from disputed facts, meaning that the issue of notice is one that cannot be decided on summary judgment.

Defendant's reliance on its internal policies (which appear to require written notice) is also misplaced, for if those policies required written notice at a time when FMLA required only "adequate" notice, then enforcement of the policy would violate the statute. Those policies do not trump the rights of an employee under the FMLA.

**CONCLUSION**

The two issues raised in this motion require knowledge of all the facts surrounding the termination of Plaintiff's employment on December 23, 2003, and those facts are the very ones most hotly disputed here. Those issues cannot therefore be resolved on summary judgment.

The motion for summary judgment [#16] is therefore denied. This case remains set for final pretrial on December 21, 2006, at 10:00 a.m. in person. Any motions in limine shall be filed on or before December 11, 2006, and responses to any such motions shall be filed on or before December 18, 2006.

ENTER this 14th day of November 2006.

                      s/ John A. Gorman

                      JOHN A. GORMAN
                      UNITED STATES MAGISTRATE JUDGE